UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-354-GWU

FLOYD CALVIN WELLS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Floyd Calvin Wells, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of morbid obesity and chronic low back pain (Tr. 33). Nevertheless, based on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Wells retained the residual functional capacity prior to his Date Last Insured (DLI) to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 35-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 52, ninth grade education, and work experience as a truck driver and heavy equipment operator could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional restrictions. He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps and stairs; (3) could no more than frequently bend; and (4) needed to avoid concentrated exposure to noisy environments, vibration, unprotected heights, hazardous machinery, temperature extremes, excessive humidity, and pulmonary irritants. (Tr. 20-1). The VE responded that there were jobs that such a person could perform,

and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 21).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that the plaintiff's DLI was December 31, 2007 (Tr. 89), meaning that he was required to show disability prior to that date in order to be entitled to benefits.

Mr. Wells alleged disability beginning December 31, 2002 due to severe back pain, foot problems, bilateral hearing loss (which was especially severe in the left ear), and high blood pressure. (Tr. 111). At the administrative hearing, he testified that he had been laid off in 2001, but the later onset date was presumably due to his receipt of unemployment benefits. (Tr. 6, 111). He admitted that his diabetes had only been discovered "a couple of months" before the April 16, 2009 administrative hearing (Tr. 10), meaning that it was not discovered until after the DLI. He testified that he had been having difficulty with back pain before he stopped working, but he was laid off because of a company cutback and not because of medical reasons. (Tr. 6-7).

In terms of medical evidence, the plaintiff submitted some office notes from Dr. Scott Stephens, a family practitioner, reflecting treatment for hypertension beginning in 2002. (E.g., Tr. 175-83). There is no evidence of any complaints of other problems before the DLI, and no indication of functional restrictions. A

chiropractor, Christopher McNevin, reported that he had treated Mr. Wells for low back pain, but had not seen him since December, 2003 and was unable to assess disability. (Tr. 188).

    Dr. Martin Fritzhand performed a consultative physical examination on January 24, 2008, less than a month after the DLI. Mr. Wells described a four year history of low back pain, sometimes radiating into his left hip and leg, with occasional numbness. (Tr. 190). He was not seeing any physician regarding the problem due to lack of funds. In addition, Mr. Wells stated that he was short of breath most of the time, although he could ambulate on level terrain without difficulty. He stated that he had stopped smoking the previous September. (Id.). Dr. Fritzhand's examination showed that Mr. Wells was "massively obese," and his blood pressure was 227/118. (Tr. 191). Although he had a stiff gait, he appeared to be comfortable sitting and supine, could bend forward 90 degrees at the waist, and could stand on either leg without difficulty. There was no muscle spasm or tenderness. Straight leg raising was limited to 50 degrees bilaterally and the range of motion of both hips was slightly diminished. X-rays of the lumbosacral spine and left hip were normal. (Tr. 193). His breath sounds were also distant. (Tr. 191). Dr. Fritzhand listed his impression as being morbid obesity, chronic low back pain, "rule out" chronic obstructive pulmonary disease, and uncontrolled hypertension. (Tr. 192). He advised Mr. Wells to see a physician as soon as possible for his

hypertension, but noted there was no evidence of end organ damage. He was unable to assess any functional limitations without a pulmonary function test. (Id.).

State agency physicians reviewed the record, and the ALJ adopted restrictions expressed by the most recent of the reviewers, Dr. Carlos X. Hernandez, on June 5, 2008. (Tr. 236-43). This opinion provides support for the ALJ's decision.

Subsequently, additional evidence was submitted, all of which was generated after the DLI.

An audiogram taken in May, 2008 showed mild to severe hearing loss on the right and moderate to profound loss on the left, but with excellent discrimination. (Tr. 265). No specific functional limitations were suggested.

Mr. Wells began treatment with a new physician, Dr. Anthony Stugan, on September 29, 2008, with complaints of hypertension and pain in the bottom of his feet. (Tr. 252). He reported that the foot pain had only been present for six months, which would mean that it started after the DLI. Dr. Stugan diagnosed it as being plantar fasciitis and prescribed medication along with a recommendation to use ice and stretch the feet. (Tr. 251). The plaintiff's hypertension was described as stable. It was not until February, 2009 that diabetes mellitus was diagnosed. (Tr. 269). Dr. Stugan did not suggest any functional limitations, and it does not appear that any

of the conditions treated "related back" to the period before the DLI except for the longstanding high blood pressure.

Although the plaintiff alleges on appeal that the ALJ disregarded the medical opinions of Drs. Fritzhand, Stephens, Stugan, and McNevin, there is nothing in the opinions of any of these sources which is inconsistent with the administrative decision.  Consequently, this argument is without merit.  The plaintiff's other argument is that the defendant erroneously evaluated his testimony regarding his pain, symptoms, and medications, citing 20 C.F.R. § 404.1529.  Specifically, he alleges that the ALJ did not provide a specific rationale for rejecting his testimony. However, a review of the ALJ's decision shows that the ALJ specifically considered the plaintiff's conduct and daily activities. (Tr. 36). While the plaintiff might disagree with the ALJ's conclusions, the hearing decision complies with the regulatory standards.

The decision will be affirmed.

This the 29th day of July, 2010.

Signed By:
G. Wix Unthank
United States Senior Judge